# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 18, 2008

Charles R. Fulbruge III
Clerk

No. 07-60419

ADDIE STOVER

Plaintiff-Appellant

v.

HATTIESBURG PUBLIC SCHOOL DISTRICT

Defendant-Appellee

Appeals from the United States District Court
for the Southern District of Mississippi

Before HIGGINBOTHAM, STEWART, and SOUTHWICK, Circuit Judges.

STEWART, Circuit Judge:

Plaintiff-Appellant Addie Stover ("Stover") appeals the Final Judgment entered pursuant to a jury verdict in favor of Defendant-Appellee Hattiesburg Public School District ("School District"), the denial of a motion for a new trial, and the district court's grant of attorney's fees to the School District. On appeal, Stover argues that (1) the district court made evidentiary errors during the trial, (2) the district court erroneously permitted the "same actor" jury instruction, (3) the jury verdict was against the overwhelming weight of the evidence, and (4) the district court erroneously awarded attorney's fees to the School District. For the following reasons, we affirm in part, reverse and vacate in part, and render in part.

I.    FACTUAL AND PROCEDURAL BACKGROUND

In early 1996, Stover, an African American female, began working as a temporary secretary to Jimmy Hopkins in the Personnel Department at the School District.    Hopkins, an African American, was the Associate Superintendent and head of the Personnel Department.    Stover holds a bachelor's degree in English with a minor in Paralegal Studies.  In June 1996, Stover began working as a full-time secretary to Hopkins, and Stover's beginning salary was $12,945.  For the 1997-98 term, Stover was assigned to work for Dr. Gordon Walker, a white male, instead of Hopkins.  Dr. Gordon Walker was the Superintendent at the time Stover was his secretary.  Dr. Walker resigned in 1999, and Dr. James Davis, an African American, became Superintendent.  In June 2005, Dr. Davis retired, and Dr. Annie Wimbish,[1] an African American female, became Superintendent.  Stover's salary at the time she resigned in 2006 was $37,438.    Stover is not a licensed educator, and she did not have an employment contract with the School District.

During his tenure as Superintendent, Dr. Davis had a "cabinet" of high-level administrators, including Perrin Lowery, Tressie Harper, Penny Wallin, and Jimmy Hopkins; Stover was not a member of the cabinet.  Perrin, Harper, and Wallin held doctorate degrees in education, and Hopkins held a master's degree and was working on his doctorate degree.  In 2001, Dr. Harper resigned to become a superintendent for another district.  The School District did not immediately replace Dr. Harper because of budget considerations.  Stover contends that she assumed many of the responsibilities of Dr. Harper when Dr. Harper resigned; Dr. Davis testified that he assumed most of Dr. Harper's responsibilities, and the other responsibilities were spread out among others.

---

[1] Stover had already filed charges with the EEOC and her federal lawsuit by the time Dr. Wimbish became the Superintendent.

Approximately two years after Dr. Harper resigned, the School District decided to fill the vacuum created by Dr. Harper's resignation. This action arose from the School District's decision to hire Alan Oubre, a white male, as the Central Office Administrative Coordinator in August 2003. The School District concedes that it did not advertise the available position. Oubre's starting salary was $48,380 for the partial school year and $62,845 for the full school year. Oubre holds a bachelor's degree in secondary school English and a master's degree in Educational Administration. Oubre has a contract of employment with the School District.

Upon learning of Oubre's salary, Stover argued that both Oubre and she were Administrative Assistants who performed substantially equal work, and therefore, they should be paid the same. In August 2004, Stover filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that the School District discriminated against her on the basis of race and violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). On June 23, 2005, Stover filed a complaint in federal district court for claims of race discrimination under Title VII and violation of the EPA. On June 30, 2005, she filed another charge with the EEOC, adding allegations of gender discrimination and retaliation. Stover amended the complaint twice, and on January 9, 2006, Stover filed her second amended complaint alleging race and sex discrimination under Title VII, retaliation under Title VII, and violation of the EPA.

The School District moved for summary judgment on all claims. On February 8, 2007, the district court found no direct evidence of discrimination and applied the McDonnell Douglas burden-shifting framework to determine whether Stover made out a prima facie case of discrimination under Title VII. The court concluded that there was sufficient evidence in the record to withstand a motion for summary judgment as to the Title VII race and sex discrimination claims. Specifically, the district court stated the following:

> There is evidence in the record that Ms. Stover and Mr. Oubre performed similar duties and that their job functions overlapped and that Mr. Oubre assumed some of Ms. Stover's duties during her employment at [the School District]. There is also evidence in the record demonstrating differences between Mr. Oubre's and Ms. Stover's jobs. At certain times Mr. Oubre and Ms. Stover apparently shared the same title of "administrative assistant."

The district court denied the School District's motion for summary judgment as to the race and sex discrimination claims under Title VII. Citing the same evidence, the district court similarly denied the School District's motion as to the claim under the EPA.

The district court also held that there was sufficient evidence to support Stover's retaliation claim and denied the School District's motion as to that claim. The court pointed to evidence that "there had been no performance problems on Ms. Stover's part until Mr. Oubre was hired, and that in 2004, 2005 and 2006[,] there were increasing issues with Ms. Stover's performance being raised by Dr. Davis and Mr. Hopkins." The court granted the School District's motion as to Stover's claim of constructive discharge, holding that the alleged conduct did not rise to the level of constructive discharge.[2]

---

[2] Stover did not allege a claim for constructive discharge in her second amended complaint. Stover raised the claim in her response to the School District's motion for summary judgment. The district court considered the claim, concluding that "to the extent this is being asserted by plaintiff as a separate claim for relief, summary judgment for defendant is granted." We find no error in the district court's consideration of the constructive discharge claim. See Debowale v. US Inc., 62 F.3d 395, 395 (5th Cir. 1995) ("The district court should have construed [the plaintiff's] Bivens claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under Fed. R. Civ. P. 15(a) and granted it.") (citations ommitted); Cash v. Jefferson Assocs., Inc., 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss, in which plaintiff first alleged that she had been willfully discriminated against, should be treated as a motion to amend her pleadings); Sherman v. Hallbauer, 455 F.2d 1236, 1242 (5th Cir. 1972) (determining that a new allegation raised in a memorandum in opposition to a motion for summary judgment should have been construed as an amendment to the original complaint).

The case proceeded to a jury trial on February 12-16, 2007. The district court precluded certain evidence, including evidence of the School District's pattern and practice not to advertise positions of employment. Citing Frank v. Xerox Corp., 347 F.3d 130, 136 (5th Cir. 2003), the district court held that pattern and practice evidence should be excluded.

During the jury trial, the School District moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The district court took the motion under advisement and permitted the case to go to the jury. The jury returned a unanimous special verdict in favor of the School District on all claims, and the district court entered Final Judgment in favor of the School District on February 28, 2007. Stover filed a motion for a new trial, which the district court denied.

The School District moved for an award of attorney's fees and costs, which Stover opposed. The district court awarded attorney's fees to the School District in the amount of $144,058.50 and taxed costs against Stover in the amount of $10,570.06. In deciding the attorney's fees issue, the district court stated that there were "[n]umerous examples of the diverseness of [Stover's and Oubre's] jobs [] brought out during the testimony."

> While at trial it was obvious that the case was baseless, frivolous and without merit, the plaintiff and her attorney did not have the benefit of all of the information learned in discovery at the time of filing suit. However, the Court finds that the latest time that the plaintiff should have realized that her suit was frivolous and baseless was by the conclusion of discovery. She certainly should have recognized this at that time. Therefore, the Court does hereby find that from the end of discovery forward the plaintiff should be required to reimburse the defendant's attorney['s] fees.

Stover filed a timely notice of appeal, assigning the following errors by the district court: (1) not permitting alleged admissions of discrimination and discriminatory intent to be considered as direct evidence of discrimination at the

trial; (2) permitting evidence of Oubre's qualifications during the trial; (3) permitting evidence during the trial that attacked Stover's character; (4) excluding evidence of the School District's pattern and practice; (5) precluding evidence regarding constructive discharge; (6) submitting the "same actor" jury instruction to the jury; (7) the jury verdict was against the overwhelming weight of the evidence; and (8) awarding attorney's fees to the School District. We now turn to a discussion of these assigned errors.

## II.    DISCUSSION

Stover's eight assignments of error fall into five broad categories: the summary judgment ruling on the constructive discharge claim, evidentiary rulings during the trial proceedings, objections to the jury instructions, the jury verdict, and the award of attorney's fees. We will discuss each category in turn.

### A.    Constructive Discharge Claim

The district court granted the School District's motion for summary judgment on Stover's claim for constructive discharge. We review a district court's grant of summary judgment de novo. LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 386 (5th Cir. 2007). Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if the summary judgment evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All the facts and evidence must be taken in the light most favorable to the non-movant. LeMaire, 480 F.3d at 387.

To establish a constructive discharge claim, an employee "must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." Brown

v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000) (quoting Barrow v. New Orleans Steamship Ass'n, 10 F.3d 292, 297 (5th Cir. 1994)). This objective test has been referred to as the reasonable employee test. See Haley v. Alliance Compressor LLC, 391 F.3d 644, 650 (5th Cir. 2004). The evidence "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992) (citation omitted). We have considered the relevancy of the following events in determining whether a reasonable employee would feel compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 481 (5th Cir. 2008) (quoting Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 771-72 (5th Cir. 2001)).

Stover contends that she was not paid appropriately, but she does not present any evidence that she received a reduction in salary. Rather, Stover received increases in her salary. Also, she does not argue that she received a demotion, reassignment to menial or degrading work, or offers of early retirement, so neither of these factors supports Stover's assertion that she felt compelled to resign. As to the reduction of job responsibilities, Stover actually testified, that her "plate was full" and "she was happy for the help." It is therefore inconsistent to assert that she felt compelled to resign based in part on a reduction in job responsibilities.

The only factor Stover can rely on to meet the reasonable employee test is "badgering, harassment, or humiliation by the employer calculated to encourage

the employee's resignation." Aryain, 534 F.3d at 481. Stover contends that she was not provided the same career development opportunities as Oubre; her complaints of discrimination were not investigated; she was not allowed comp time while Oubre and others were allowed comp time; Mr. Hopkins exhibited anger, violence, shouting, and waved his arms at Stover; and she was excluded from prestigious retreats. The evidence that Stover cites in support of her constructive discharge claim does not amount to conditions or an environment so intolerable that a reasonable employee would feel compelled to resign. At best, the evidence shows that Stover was disgruntled that Oubre, a high-level administrator, was provided greater benefits while employed with the School District than she was provided and that she encountered difficulty in dealing with her supervisor, Mr. Hopkins.

Even assuming arguendo that Stover was subjected to a hostile working environment, none of the evidence increases the severity or pervasiveness of any harassment to the level required to support a constructive discharge claim. See Brown, 207 F.3d at 782-83 (affirming grant of summary judgment even where employee was demoted and given fewer job responsibilities). We conclude that the district court properly granted summary judgment in the School District's favor on the constructive discharge claim.

B.    Evidentiary Rulings

Stover challenges several evidentiary rulings. We review evidentiary rulings under the deferential abuse of discretion standard. Kelly v. Boeing Petroleum Servs., Inc., 61 F.3d 350, 356 (5th Cir. 1995). We will reverse a judgment for an evidentiary ruling only if it affected the substantial rights of the parties. EEOC v. Manville Sales Corp., 27 F.3d 1089, 1093 (5th Cir. 1994) (citation omitted).

1.  Direct Evidence

Stover argues that evidence that the School District admitted discriminatory conduct and violation of the EPA should have been considered as direct evidence of discrimination, and Stover should have been allowed to argue to the jury the impact and importance of direct evidence. Notably, the only evidence of the alleged admissions was Stover's testimony. She contends that the district court abused its discretion by not allowing "the Direct Evidence mode of evidentiary production," and if it would have been permitted, the McDonnell Douglas framework could have been avoided. The School District argues that the district court allowed Stover to present the statements she contends were direct evidence, and therefore, the jury had the benefit of weighing Stover's testimony and credibility in reaching its jury verdict.

Stover's discrimination claims survived summary judmgent and proceeded to trial. Stover does not argue that the evidence was excluded at trial, but rather, she concedes that her "proof was there." At trial, Stover testified to many statements that she contends were the School District's admissions that it was violating the EPA and anti-discrimation laws. For example, Stover testified to the following at trial:

> When I spoke with Mr. Hopkins in August of 2003 after Dr. Davis notified us that he was hiring Alan [Oubre], Mr. Hopkins made indication to Dr. Davis in my presence that Dr. Davis could not employ Alan Oubre as administrative assistant as it was a violation of the Equal Pay Act and other laws. Dr. Davis said, "Well, we'll just call him something else."
> . . . .
> I asked Mr. Hopkins if there was a job announcement or any posting indicating that a second position was being created. And Mr. Hopkins said there was none. That they just wanted to hire a white male.
> . . . .
> Mr. Hopkins said [Oubre] got the job because he was white.

When a full trial on the merits has been conducted, as in this case, our focus is on whether the record contains sufficient evidence to support the jury's finding of no race or sex discrimination—not on the plaintiff's prima facie case or the McDonnell Douglas framework. Raggs v. Mississippi Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002); accord Dilworth v. Cont'l Const. Co. Inc., No. 07-60850, 2008 WL 2468397, at *2 (5th Cir. 2008) (unpublished).

At trial, Dr. Davis testified that "it would have been highly inappropriate to have [Stover] part of the cabinet. She didn't . . . bring to the table the skills and knowledge, and she wasn't part of the decision making team . . . ." Dr. Davis also testified that while Stover did attend board meetings, she attended the meetings to take the minutes. According to Dr. Davis, Stover did not create agenda items, but rather, she typed and organized information that was provided to her. Dr. Davis also testified that Stover was not qualified for the position which Oubre filled. There was sufficient evidence presented at trial for the jury to conclude that the School District did not discriminate against Stover on the basis of race or sex. Therefore, Stover cannot prevail on this assignment of error.

## 2. Comparison of Qualifications

Next, Stover argues that the jury should not have been permitted to consider Oubre's qualifications. Stover argues in her brief, however, that an issue at trial "was whether Ms. Stover and Mr. Oubre were similarly situated." The district court properly instructed the jury that to prevail on the Title VII discrimination claim, Stover had to show by a preponderance of the evidence that, inter alia, "others similarly situated were treated more favorably because of their race or gender." Further, Stover's claim under the EPA required a comparison of Stover's and Oubre's "skill, effort, and responsibility" for the performance of their jobs. The EPA requires that an employer not discriminate "between employees on the basis of sex . . . for equal work on jobs the

performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). To determine whether an EPA violation occurred, the district court properly permitted evidence demonstrating the skill, effort, and responsibility required of the jobs performed by Oubre and Stover. The district court did not abuse its discretion by permitting this evidence at trial.

3.      Character Evidence

Stover also contends that the district court erroneously permitted evidence that Stover destroyed or deleted computer information. The School District argues that it was entitled to defend itself against Stover's allegations of retaliation. Stover argued that she did not have one blight on her record until she complained of discrimination when Oubre was hired. The School District contends that it countered against Stover's claim of retaliation with evidence of a pattern of Stover's conduct that showed a deteriorating professional attitude and work ethic, and the deletion of the files on the day Stover resigned was the final demonstration of her unprofessional conduct.

One of the issues at trial was Stover's claim of retaliation. In overruling the objection to the evidence at trial, the district court stated that Stover had portrayed herself to be a victim and work attitude was at issue. The court permitted the evidence for purposes of impeachment. The court also ruled that it was more probative than prejudicial. Having fully reviewed the record, we find that the district court did not abuse its discretion on this issue.

4.      Systematic Practices of the School District

Stover argues that the district court erroneously refused to permit evidence of the School District's business habit and practice of not advertising positions or allowing competition for positions. Stover contends that it was "plainly discriminatory" not to advertise the position. She also states that pattern and practice evidence should have been allowed to prove intent and/or

pretext. Further, Stover argues that the School District's hiring system "allowed . . . complete racial and gender discrimination."

The School District argues that regardless of the district court's pre-trial exclusion of this evidence by granting the School District's motion in limine, the jury heard the evidence, and therefore, the issue is moot.[3] At trial, Stover testified that the district was "culpable for failing to advertise th[e] position." Dr. Davis testified to the following:

Q. Did Mr. Oubre have any competition for the job?

A. No.

Q. Did you place any advertisement for the position?

A. No.

The jury, therefore, heard evidence that the School District did not advertise the position for which Oubre was hired.

The School District also contends that failure to have a policy requiring employment positions to be advertised does not mean its hiring practices are discriminatory. We agree that the lack of a policy requiring advertisement under these circumstances is not evidence of discrimination. Stover provides no Mississippi law or School Board policy requiring the School District to advertise the position for which Oubre was hired or any other position in the district. Also, Stover's contention that the School District's systematic practice of not advertising positions allowed complete racial and gender discrimination is unsupported by any evidence in the trial record. We find no reversible error on this issue.

---

[3] Stover even states in her appellate brief that "the existence of the system is not disputed and was conceded before trial and during trial." Appellant Br. at 40 (emphasis added).

C.    Jury Instructions

Stover argues that the district court erroneously permitted the "same actor" jury instruction.  Specifically, Stover states that the district court instructed the jury that it could infer that discrimination was not the motive behind the challenged employment action if Mr. Hopkins hired her.  We will reverse a jury verdict based on the jury charge only if "the charge as a whole 'leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.'" McCullough v. Beech Aircraft Corp., 587 F.2d 754, 759 (5th Cir. 1979) (citation omitted).

The referenced jury instruction provided as follows:

> If you find that the same person who hired the plaintiff is also one of the people who allegedly discriminated against her, you may consider it inherently inconsistent that an individual who is willing to hire or promote a person who is a member of a protected class will discriminate against that same individual because she is a member of that class.

This instruction is not a misstatement of the law.  Compare Haun v. Ideal Indus., Inc., 81 F.3d 541, 546 (5th Cir. 1996) (stating that such evidence is relevant but declining to establish a rule that no inference of discrimination could arise under the same actor circumstances), with Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996) (noting acceptance of same actor inference by several other circuits and expressing approval of the inference).  This assignment of error is without merit.

D.  Jury Verdict

Stover contends that the jury verdict was against the overwhelming weight of the evidence, and therefore, we should reverse.  The School District argues that there was sufficient evidence to support the jury verdict. "Challenges to the sufficiency of the evidence must be raised in a Federal Rule of Civil Procedure 50(a) motion for judgment as a matter of law before

submission of the case to the jury." United States ex rel. Wallace v. Flintco Inc., 143 F.3d 955, 960 (5th Cir. 1998). During the trial, Stover did not raise a Rule 50 motion for judgment as a matter of law before the case went to the jury; only the School District raised such a motion. Where Stover failed to raise a Rule 50 motion for judgment as a matter of law, we consider the sufficiency of the evidence under a plain error standard,[4] reversing "only if the judgment complained of results in a 'manifest miscarriage of justice.'" Flintco, Inc., 143 F.3d at 963-64.

On plain error review "the question before this Court is not whether there was substantial evidence to support the jury verdict, but whether there was any evidence to support the jury verdict." McCann v. Texas City Refining, Inc., 984 F.2d 667, 673 (5th Cir. 1993). "If any evidence supports the jury verdict, the verdict will be upheld." Flintco, Inc., 143 F.3d at 964 (citing Polanco v. City of Austin, 78 F.3d 968, 974 (5th Cir. 1996)); accord Dilworth, 2008 WL 2468397, at *3 ("We have reviewed the record and confirmed that Dilworth indeed failed to move for judgment as a matter of law on the issue of the sufficiency of the evidence before the case was submitted to the jury. We must therefore consider Dilworth's current challenge to the sufficiency of the evidence under the plain error standard . . . .").

In this case, there clearly exists some evidence to support the jury determination. When Dr. Davis was questioned about the allegation of race discrimination, he testified that

---

[4] Although neither party provides the applicable standard of review for this issue, we must apply the appropriate legal standard of review to each assignment of error. See United States v. Duhon, 541 F.3d 391, 396 n.2 (5th Cir. 2008) ("[N]o party has the power to control our standard of review." (quoting United States v. Vontsteen, 950 F.2d 1086, 1091 (5th Cir. 1992))). "The parties' failure to brief and argue properly the appropriate standard may lead the court to choose the wrong standard. . . . A reviewing court may reject both parties approach to the standard." Vontsteen, 950 F.2d at 1091.

I never in my whole career based any decision on race. That just simply was not a part of the way I did business or functioned as a leader. . . . [I]t was disconcerting because it was just so farfetched. It was just totally fictitious that any decision was made in that central office based on race. It just didn't happen.

There was also evidence from which the jury could conclude that Stover and Oubre were not similarly situated. While Oubre and Stover at some time carried the same title of Administrative Assistant, Dr. Davis explained that

there are different degrees of assistance. Some assistance takes a highly qualified person with some kind of administrative certification like Dr. Harper . . . . Then there might be someone else who might be called administrative assistant who doesn't have to be nearly as highly qualified and may not do the kind of heavy lifting . . . that another person who may have that title.

There was also evidence from which the jury could conclude that Stover's and Oubre's positions were not substantially equal. Dr. Davis testified that there were "vast, vast differences in what [Oubre and Stover] would do." Dr. Davis also testified that Stover attended meetings to take the minutes and "wasn't part of the decision making team." Oubre, on the other hand, was a member of the cabinet. According to Dr. Davis, Oubre supervised the technology department, helped to supervise the department of building and grounds and the department of transportation, and he managed high-dollar grants. Evidence supports the jury verdict, and this assignment of error is also without merit.

E.    Award of Attorney's Fees

Finally, we turn to Stover's argument that the district court erroneously awarded attorney's fees to the School District. The parties are not clear as to the designation of attorney's fees and costs. The School District states in its brief that the district court taxed costs against Stover in the amount of $5,285.03. The docket in the court below indicates that costs were actually taxed against Stover in the amount of $10,570.06. The district court's order provides that "attorney's fees in the amount of $144,058.50 and costs of $10,570.06 are

assessed to Plaintiff Addie Stover." The district court separately considered an exhibit seeking costs in the amount of $5,285.03 and other exhibits pertaining to costs pursuant to Rule 54(d). Based on the aggregate total, the district court assessed costs in the total amount of $10,570.06.

Stover does not separately raise the issue of costs on appeal. Based on Stover's calculation of "attorney fees," it appears that Stover has lumped the district court's award of attorney's fees and costs into one issue. Stover assigns error to the attorney's fee award of "$154,628.56," which apparently results from the combined attorney's fees in the amount of $144,058.50 and costs in the amount of $10,570.06. We will separately consider the district court's award of attorney's fees and costs to the School District.

        1.    Costs

Federal Rule of Civil Procedure 54(d) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs - other than attorney's fees - should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). Stover does not address Rule 54's application to this case, and she does not contend that the School District was not the prevailing party. The School District was the prevailing party, and the district court could tax costs in favor of the School District pursuant to Rule 54(d).

However, the district court assessed an improper amount of costs to Stover. First, the Bill of Costs submitted by the School District stated costs in the amount of $5,285.03. In calculating costs, the district court not only considered this amount, but it also considered the School District's exhibits substantiating this amount. The effect of this dual consideration was to assess double the amount of taxable costs, that is, $5,285.03 plus $5,285.03 for a total of $10,570.06.

On appeal, the School District, citing the district court's Order dated May 31, 2007, states that the district court taxed "costs in the amount of $5,285.03."

The referenced Order actually orders that "costs of $10,570.06 are assessed to plaintiff Addie Stover." The School District implicitly acknowledges in its brief that the proper amount of taxable costs was $5,285.03, though neither party brought this clear error in calculation to the attention of the district court or this court. Because the district court improperly awarded costs in excess of those allowable under Rule 54(d)(1), we vacate the costs award in the amount of $10,570.06 and render costs against Stover and in favor of the School District in the amount of $5,285.03.

We now turn to the district court's award of attorney's fees.

### 2. Attorney's Fees

This court reviews a district court's award of attorney's fees for abuse of discretion. Boehms v. Crowell, 139 F.3d 452, 462 (5th Cir. 1998). As a general rule, litigants must pay their own attorney's fees. Alyeska Pipeline Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). Congress has provided exceptions to this rule, allowing the prevailing party to recover attorney's fees under certain circumstances. See, e.g., 42 U.S.C. § 2000a-3(b) ("In any action commenced pursuant to this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, and the United States shall be liable for costs the same as a private person."). Notwithstanding the "prevailing party" language, the exceptions generally serve to protect plaintiffs. Fee-shifting statutes usually create "a presumption in favor of awarding fees to a prevailing plaintiff but allows fees to be awarded to a prevailing defendant only if the suit was frivolous." Sullivan v. William A. Randolph, Inc., 504 F.3d 665, 670 (5th Cir. 2007).

In Christianberg Garment Company v. EEOC, 434 U.S. 412 (1978), the Supreme Court discussed the differentiating considerations applicable to an award of attorney's fees to a prevailing plaintiff and an award of attorney's fees to a prevailing defendant, even where a statute on its face may provide for an

award of attorney's fees to either the plaintiff or defendant as the prevailing party.

> First, . . . the plaintiff is the chosen instrument of Congress to vindicate "a policy that Congress considered of the highest priority." Second, when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law. As the Court of Appeals clearly perceived, "these policy considerations which support the award of fees to a prevailing plaintiff are not present in the case of a prevailing defendant." A successful defendant seeking counsel fees . . . must rely on quite different equitable considerations.

Christiansburg Garment Co., 434 U.S. at 418-19. The Supreme Court ultimately concluded that "a district court may, in its discretion, award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Id. at 421.

The Court cautioned, however, that the district court should "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Id. at 421-22. This Court has explained that under Christiansburg, to determine whether a suit is frivolous, a court must ask whether "the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." Jones v. Texas Tech Univ., 656 F.2d 1137, 1145 (5th Cir. 1981).

In Pelmer v. Parsons-Gilbane, 713 F.2d 1127 (5th Cir. 1983), we considered a case significantly analogous to this action. In Pelmer, the plaintiff brought a Title VII and EPA suit against her employer. Pelmer, 713 F.2d at 1130. The case proceeded to trial, and the district court entered judgment in favor of the defendant employer. Id. at 1131-32. Finding that the plaintiff's claims were "simply frivolous," the district court awarded attorney's fees to the defendant.

We reversed the award of attorney's fees, stating that the district court appeared to have "engaged in exactly the post hoc reasoning and hindsight logic that the Supreme Court proscribed." Id. at 1141.

In this case, the district court found that "the latest time that the plaintiff should have realized that her suit was frivolous and baseless was by the conclusion of discovery." Subsequent to the close of discovery, the School District filed a motion for summary judgment. The court referenced numerous examples of evidence supporting Stover's claims[5] and found that there was sufficient evidence in the record to survive summary judgment on the race and gender discrimination claims under Title VII, the retaliation claim under Title VII, and the EPA claim. Stover proceeded to trial on those claims.

During the trial, the School District moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 after Stover rested. Referencing the "tremendous amount of testimony," the district court took the motion under advisement and allowed the trial to proceed to a jury verdict. The jury returned a verdict in favor of the School District on all the claims.

In awarding attorney's fees to the School District, the district court, as the district court in Pelmer did, appears to have engaged in post hoc reasoning to find that Stover's action was frivolous. The record does not support a finding that Stover's action was frivolous, unreasonable, or without foundation. There was plausible evidence supporting Stover's claim, as set forth in the district court's order on summary judgment and the testimony at trial. The unanimous jury verdict for the School District does not totally negate that evidence; it

---

[5] For example, in reference to the retaliation claim, the district court stated that "reduction or reassignment of job duties and negative evaluations" were more serious and that "there is evidence that there had been no performance problem on Ms. Stover's part until Mr. Oubre was hired." In regard to other claims, the district court cited evidence that Stover and Oubre performed similar duties and at certain times apparently shared the same title of "administrative assistant."

simply means that the jury unanimously concluded that the weight of the evidence was not in Stover's favor.

The district court erroneously awarded attorney's fees[6] to the School District, and we reverse and vacate the award of attorney's fees.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment in part, reverse and vacate in part, and remand in part.  We REVERSE and VACATE the award of attorney's fees and costs, RENDER costs in the amount of $5,285.03 against Stover and in favor of the School District, and AFFIRM the judgment in all other respects.

---

[6] The district court's standard for assessment of attorney's fees mentioned only the Title VII claims; it made no reference to the EPA claim.  It appears, however, that the School District's request for attorney's fees included fees incurred in relation to both the Title VII claims and the EPA claim.  The EPA provides in part that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b).  Unlike Title VII, the EPA's attorney's fee provision does not, on its face, allow for the award of attorney's fees to a prevailing defendant. Compare 29 U.S.C. § 216(b) with 42 U.S.C. § 2000e-5(k) ("In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.") (emphasis added).  Because we conclude that Stover's action was not frivolous and the School District was not entitled to attorney's fees, we need not address the different statutory authorities supporting the fee award.