Allan THOMAS, Plaintiff–Appellant

v.

**Fred HILL, Jr., doing business as Home Appliance Parts & Service, doing business as Skent–N–Dent Outlet, doing business as Hillco Overhead Doors, doing business as Hillco Properties, Defendant–Appellee.**

No. 14–31186.

United States Court of Appeals, Fifth Circuit.

Aug. 4, 2015.

Kermit Lamar Walters, III, Esq., Brei-
thaupt, Dunn, Dubos, Shafto & Wolleson,
L.L.C., Monroe, LA, for Plaintiff–Appel-
lant.

Don Hewitt Johnson, Monroe, LA, for
Defendant–Appellee.

Before STEWART, Chief Judge, and
JOLLY, and GRAVES, Circuit Judges.

PER CURIAM: *

Allan Thomas, the plaintiff below, ap-
peals from a take nothing jury verdict in
favor of Fred Hill, Jr., on Thomas's claim
under the Americans with Disabilities Act
("ADA"), 42 U.S.C. § 12112.[1]  Thomas
contends that the jury's verdict is incom-
patible with the evidence presented.  For
the following reasons, the jury's verdict
stands, and we AFFIRM the judgment of
the district court.

I.

Hill hired Thomas in February 2002 to
work in his home appliance business.
Thomas worked as a manager and ulti-
mately became the general manager at
Hill's store.  As part of his job, Thomas
did a variety of tasks, ranging from clerical
office work to unloading and moving appli-
ances.  He was often referred to as a
"floater," meaning that he could take on
tasks in the various departments of the
store when needed.

---

* Pursuant to 5TH CIR. R. 47.5, the court has
 determined that this opinion should not be
 published and is not precedent except under
 the limited circumstances set forth in 5TH CIR.
 R. 47.5.4.

1. Although the parties do not discuss the
 claim in any detail, the Plaintiff also pursued
 a state law claim under the Louisiana Em-
 ployment Discrimination Law ("LEDL"), La.
 Rev.Stat. Ann. §§ 23:301–369.  The district
 court provided the same jury instructions as
 to both claims, and neither party challenges
 the district court's jury instructions.  Thus,
 we treat the LEDL claim as identical to the
 ADA claim.

On May 14, 2012, Thomas felt a pain in his shoulder while moving refrigerators at Hill's warehouse. He went to the hospital and learned that he had suffered a heart attack. Consequently, Thomas underwent heart surgery. After the surgery, Thomas remained in the hospital for one week before he was released. In the months following the surgery, Thomas recovered at home without returning to work.

Throughout the summer of 2012, Thomas corresponded on various occasions with Hill, his wife Pam Hill, and other co-workers. Although he indicated on several occasions that he intended to return to work in the future, he did not offer a specific date. The Hills also testified that they met with Thomas in mid-July at his home and that Thomas did not answer when asked when he would be returning to work. Hill testified that he encouraged Thomas to return to work on multiple occasions, offering to allow him to sit around in the office and take as many breaks as needed.

Finally, on August 9, 2012, Thomas's employment was terminated by Hill. In a letter to Thomas, Hill said that he was firing Thomas because he failed to keep Hill informed as to when he would return to work. The letter also mentioned a number of other things, including the medical benefits that Hill had paid for Thomas's medical treatment and Thomas's comments regarding the stress level of his job.

After first filing a charge with the Equal Employment Opportunity Commission ("EEOC"), Thomas filed suit against Hill in federal court, alleging that Hill fired him due to his disability. The case was tried to a jury, which found in favor of Hill. Specifically, the jury answered "No" to two interrogatories: "Was Plaintiff Allan Thomas regarded as disabled by Defendant Fred Hill, Jr., at the time of his termination;" and "Do you find by a preponderance of the evidence that Plaintiff Allan Thomas was terminated by Defendant Fred Hill, Jr., because of an actual or perceived disability." [2] Thomas appeals, challenging the evidentiary basis for the jury's verdict.

## II.

We generally employ a deferential standard in reviewing a jury's verdict, upholding the verdict "[u]nless the evidence is of such quality and weight that reasonable and impartial jurors could not arrive at such a verdict." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 369 (5th Cir.1998) (internal quotation marks omitted). "We may not reweigh the evidence, reevaluate the credibility of the witnesses, nor substitute our reasonable factual inferences for the jury's reasonable inferences." *Id.*

When the party challenging the jury's verdict does not move for a judgment as a matter of law, our standard of review becomes even more deferential. *See Polanco v. City of Austin, Tex.*, 78 F.3d 968, 974 (5th Cir.1996). If the plaintiff fails to raise an appropriate motion under Rule 50 for judgment as a matter of law before the case is submitted to the jury, we review the verdict only for plain error. *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 995 (5th Cir.2008). Under the plain error standard, we will reverse "only if the judgment complained of results in a manifest miscarriage of justice." *Id.* (internal quotation marks omitted). Instead of deciding whether *substantial* evidence supports the jury's verdict, we will affirm if *any* evidence supports the verdict. *Id.*

---

**2.** The jury answered "Yes" to the first question, which asked whether Thomas was a qualified individual with a disability at the time he was discharged.

It is undisputed that Thomas failed to move for judgment as a matter of law before the case went to the jury. Indeed, it does not appear to us that Thomas ever raised this issue before the district court. Thus, we turn to decide only whether any evidence supports the jury's verdict.

### III.

To prevail on an ADA claim, the plaintiff must prove: (1) he suffers from a disability; (2) he was qualified for the position at issue; and (3) his employer made an adverse decision regarding his employment because of the disability. *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir.2013). The jury concluded that Thomas was disabled at the time Hill fired him. There also appears to be no dispute that Thomas was qualified for the position. Instead, the jury found that Hill did not fire Thomas *because* Thomas was disabled.

Thomas argues that this latter finding was error on the part of the jury. First, he points to Hill's letter informing Thomas that he was discharged. In that letter, Hill suggested that Thomas should consider a different job that would cause him less stress and discussed payments that the company had made toward his medical expenses during his absence. Additionally, Thomas points to evidence that Hill hired two non-disabled employees to replace Thomas after he was fired. In sum, Thomas argues that this evidence supports a jury verdict in his favor and demonstrates that the verdict should be vacated.

Thomas raises the decibel of his argument by contending that the Hills' testimony constitutes "perjury." At trial, Thomas's counsel attempted to impeach the Hills by pointing to apparent differences between their trial testimony and their prior statements. The primary inconsistency argued on appeal concerns the reason for Thomas's termination. Hill had said at his deposition that Thomas did not have problems at work and that the Hill letter to Thomas provided the reasons for his firing. At trial, however, both Mr. and Mrs. Hill testified that Thomas was fired for reasons that went beyond those reasons stated in the letter—he was disrespectful to Hill and rude to his co-workers.[3] The Hills did not mention these issues in the termination letter to Thomas, the response to the EEOC, nor in their deposition testimony. Additionally, Thomas's counsel pointed out that the Hills complained in the letter and the EEOC response about a lack of contact from Thomas, even though the record indicates that Thomas emailed the Hills on multiple occasions and stated on at least two occasions that he planned to return to work in the future. The Hills testified at trial that Hill fired Thomas in part because he refused to give Hill a date for his return or a promise to talk to his doctors about setting such a date.

The jury here could believe the Hills' trial testimony, despite the alleged inconsistencies. The jury was fully informed of *all* of the alleged contradictions that

---

**3.** Thomas also points out a number of inconsequential inconsistencies. For example, Thomas notes that the Hills never stated at their deposition that they met in person with Thomas at his home in mid-July. Thomas, however, confirmed that the mid-July meeting occurred. Additionally, Thomas raises some confusion regarding the letter firing Thomas and the letter to the EEOC. It appears from the record that Mr. Hill would dictate the basic framework for a letter to Mrs. Hill, and Mrs. Hill would then write the actual letter, which Mr. Hill would sign. Thus, Hill would regularly say that he "wrote" a letter when Mrs. Hill actually wrote the text of the letter. The Hills also testified at trial that the decision to fire Thomas was not solely Mr. Hill's. Instead, Mr. Hill wanted to fire him, but, as a small business, the decision was made as a family.

Thomas raises on appeal. Even if the Hills' trial testimony is impeached, however, the *jury* must make the ultimate determination as to the Hills' credibility. *See Rivera v. Union Pac. R.R. Co.*, 378 F.3d 502, 510 (5th Cir.2004) ("[T]he railroad's able counsel had the opportunity to, and did in fact attempt to impeach Dr. LeGrand's testimony on cross. Nonetheless, the jury chose to credit the testimony of Rivera and his witnesses.... [I]t is not the task of this Court to reconsider the evidence or assess the credibility of witnesses...."). [4]

■ Given the Hills' trial testimony, we cannot conclude that there is *no* evidence to support the jury's verdict. Mrs. Hill testified at length that Thomas had a "short fuse" and could regularly be overheard yelling at his co-workers. She also testified that Thomas "really didn't like [Mr. Hill]" and "would say negative things to other employees about [Mr. Hill] because [Thomas] thought that he knew more about running the business than [Mr. Hill] did and he could do a better job." Similarly, Mr. Hill testified that he was concerned after Thomas did not respond to his questions in mid-July regarding his return to work. At the meeting at Thomas's house, Hill testified that Thomas did not offer to discuss setting a return date with his doctor. Instead, Thomas only gave Hill a "blank stare." He also testified that he did not view Thomas as disabled and did not foresee that he would be disabled after his recovery period. Additionally, when he was examined by Thomas's counsel at trial, Hill testified that he did not fire Thomas due to his disability. Thus, the jury could conclude, in the light of the Hills' testimony, that Hill did not discharge Thomas because he was disabled.

■ In any event, it seems clear that the contradictions in the Hills' trial testimony do not give rise to a "manifest miscarriage of justice." *Stover*, 549 F.3d at 995 (internal quotation marks omitted). The Hills were not experienced in legal matters, nor in the nuances of recording the details of their transactions with Thomas. [5] Furthermore, the Hills also provided explanations for their comments in the letter and the EEOC charge. Regarding the letter, Mrs. Hill testified that she did not include the comments referring to the job-related stress or Thomas's use of medical insurance as reasons for his firing. Instead, she testified that the office environment was *not* stressful and that she included the comment to underscore Thomas's own comments about his job. Similarly, she testified that she discussed some of the payments that they had made on Thomas's behalf to simply make him aware of what they had done for him. Finally, the Hills also testified that they generally lacked experience responding to EEOC charges and were not entirely sure as to what they should place in the response.

In sum, we may not "reweigh the evidence or set aside the jury's verdict merely because [we] could have drawn different inferences or conclusions from the evidence, or feel that other results might be

---

4. *Rivera* involved a defendant's challenge to a jury's verdict rendered in the plaintiff's favor on a claim brought under the Federal Employer's Liability Act ("FELA"). The deferential standard applied to plaintiff's verdicts in FELA claims is virtually identical to the standard of review here, as FELA verdicts are affirmed "unless there is a *complete absence*

of probative facts to support the conclusion reached by the jury." 378 F.3d at 505 (emphasis added).

5. Mr. Hill testified: "I knew that I did not fire [Thomas] for anything to do with discriminatory disability. So I never gave it any thought at all."

more reasonable." *Wood v. Diamond M Drilling Co.*, 691 F.2d 1165, 1168 (5th Cir. 1982). Here, the Hills testified before the jury, and Thomas's counsel clearly pointed out the various inconsistencies in the Hills' trial testimony. Nonetheless, a jury, exercising its prerogative as judges of the facts and credibility, chose to believe the Hills' trial testimony and render its verdict in Hill's favor. We find no reversible error, particularly where Thomas's counsel never raised the issue below.

Accordingly, the judgment of the district court is

AFFIRMED.