## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30812

United States Court of Appeals
Fifth Circuit

**FILED**

June 18, 2019

Lyle W. Cayce
Clerk

THOMAS F. HEBERT; DAWN HEBERT,

> Plaintiffs - Appellants

v.

TITAN INTERNATIONAL, INCORPORATED,

> Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:15-CV-1706

Before HAYNES, GRAVES, and HO, Circuit Judges.

PER CURIAM:*

Thomas Hebert appeals the district court's denial of his renewed motion for judgment as a matter of law or, in the alternative, for a new trial. We AFFIRM.

## I. Background

Thomas Hebert was injured when a multi-piece wheel exploded as he was inflating the tire around the wheel. Hebert had been asked by his

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30812

employer to dissemble the wheel on a piece of farm equipment because the tire was losing air. As Hebert reassembled the wheel, it exploded, shooting metal pieces at Hebert's face and throwing him backwards several feet. Hebert suffered serious injuries as a result of the explosion.

Hebert sued Titan International, Inc. ("Titan"), the manufacturer of the wheel, under the Louisiana Products Liability Act ("LPLA"). He alleged the multi-piece wheel was unreasonably dangerous based on design defect and inadequate warning. The case proceeded to trial; prior to submission to the jury, Hebert filed a motion for judgment as a matter of law, which was denied.[1] Thereafter, the jury found for Titan. Hebert filed a renewed motion for judgment as a matter of law (using the terminology of "judgment notwithstanding the verdict") (hereinafter "RJMOL") or in the alternative, for a new trial. Hebert argued the jury's verdict was against the great weight of the evidence and that the issues of whether Hebert's use of the wheel was reasonably anticipated, whether there was an alternative design available, and whether his damages were caused by a defect in the product were undisputed and should not have been submitted to the jury. He argued a new trial was warranted because the district court impermissibly allowed evidence to be admitted that he tested positive for methamphetamine. The district court denied the motions, and Hebert timely appealed.

---

[1] To the extent that Hebert's renewed motion exceeds his original pre-verdict motion, we "lack power" to address it, as a party cannot a renew a motion he never made. *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 680 (5th Cir. 2016). Even if we were to consider the arguments under a plain error standard, however, it would not change the result. *McLendon v. Big Lots Stores, Inc.*, 749 F.3d 373, 374–75 & n.2 (5th Cir. 2014) (per curiam) (not designated for publication) (concluding the court lacked power to address Rule 50 argument, but determining it would fail in the alternative under plain error review, in any event).

No. 18-30812

## II. Discussion

On appeal, Hebert advances the same arguments he made below. We first consider his arguments about the sufficiency of the evidence at trial and then his argument about the drug-test testimony. We conclude that neither justifies reversal.

**A. The district court did not err in denying Hebert's motion for RJMOL.**

Hebert argues that the district court erred in denying his motion for RJMOL because the "overwhelming amount of evidence required a verdict in Plaintiffs' favor" that the multi-piece wheel was unreasonably dangerous based on its design and because Titan provided inadequate warnings. In the alternative, he argues that several of the issues submitted to the jury were undisputed and asks us to remand for a trial excluding those issues.

We review a district court's denial of a motion for RJMOL de novo. *Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 405 (5th Cir. 2007). "A court should grant a post-judgment motion for judgment as a matter of law only when 'the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.'" *Id.* (quoting *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004)); *see* FED R. CIV. P. 50. We "view all evidence and draw all reasonable inferences in the light most favorable to the verdict." *Id.* (quoting *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 392 (5th Cir. 2000)).

A plaintiff must establish four elements under the LPLA: "(1) that the defendant is a manufacturer of the product;[2] (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous'; and (4) that the

---

[2] The parties stipulated that Titan manufactured the wheel at issue.

claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 261 (5th Cir. 2002). A product is unreasonably dangerous in design if there is an alternative design "capable of preventing the claimant's damages," and the likelihood and severity of damages outweighs, in relevant part, the adverse effect the alternative design might have on the utility of the product. *See* LA. REV. STAT. ANN. § 9:2800.56.

Hebert produced a great deal of evidence that multi-piece wheels are inherently dangerous and that single-piece wheels are not and could have prevented the injuries he suffered. But Titan produced some evidence that single-piece wheels are also dangerous and would not have provided the same utility; Titan averred that large tires such as those used on some agricultural equipment do not fit on single-piece wheels.

In addition, Titan produced evidence that Hebert did not use the multi-piece wheel in a reasonably anticipated way. Hebert did not take the recommended precautions, such as airing up the tire in a cage or using a clip-on air chuck to inflate the tire, that would have allowed him to inflate the tire outside the wheel's trajectory path. Instead, he stood directly in front of the tire while he inflated it. Thus, we cannot conclude that "the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." *Allstate Ins. Co.,* 501 F.3d at 405 (quoting *Pineda,* 360 F.3d at 486).

We reach the same conclusion about Hebert's inadequate warning claim. Hebert argues Titan failed to provide an adequate warning about the dangers of multi-piece wheels because there was no warning on the wheel itself; instead, Titan provided warnings only on its website and in the catalog that accompanied the wheel at purchase. But Titan was not required to provide a warning on the wheel. *See Lockart v. Kobe Steel Ltd. Constr. Mach. Div.*, 989

No. 18-30812

F.2d 864, 868 (5th Cir. 1993) (noting that a warning may be adequate when not affixed to the product when it would be impractical to put all warnings on the product); *Broussard v. Cont'l Oil Co.*, 433 So. 2d 354, 355–56, 358 (La. Ct. App. 1983) (holding that a "small notice" on the side of a drill instructing the user to refer to the owner's manual for safe operation was an adequate warning).  The adequacy of a warning is usually a fact issue, *Bloxom v. Bloxom*, 512 So.2d 839, 844 (La. 1987) *superseded by statute on other grounds as stated in Payne v. Gardner*, 56 So. 3d 229, 231 (La. 2011), and the jury could have found that the warnings on the website and in the catalog were adequate.

Further, a warning is not required to reach the end user if the user would have known how to properly handle the product.  *Lockart*, 989 F.2d at 868; *see also* LA. REV. STAT. ANN. § 9:2800.57(B).  Here, Hebert's testimony that he had experience assembling multi-piece wheels and Hebert's boss's testimony that he understood the safety precautions relating to multi-piece wheels because of his experience working on a farm could have led the jury to find that Titan's warnings were adequate because Hebert would have known how to properly handle the product.

In the alternative, Hebert urges that there were several undisputed issues that were submitted to the jury and asks us to remand for a new trial that excludes those issues.  Hebert claims that it was undisputed that an alternative design existed that was capable of preventing his injuries, his use was reasonably anticipated, and he suffered damages.  We disagree.

First, as noted above, it was not undisputed that a viable alternative existed because Titan produced some evidence that single-piece wheels were also dangerous and would not have provided the same utility.  Second, although Titan's corporate representative admitted that it was foreseeable that a user could have reassembled the multi-piece wheel without fully inserting the lock ring, allegedly the only way to cause an explosion,

"foreseeable" is not analogous to "reasonably anticipated" under the LPLA. What a manufacturer should reasonably expect is narrower than what a manufacturer might foresee. *See Matthews v. Remington Arms Co., Inc.*, 641 F.3d 635, 646–47 (5th Cir. 2011) ("'Reasonably anticipated use is more restrictive than the broader, pre-LPLA standard of normal use,' and it does not suggest manufacturer liability 'for every conceivable foreseeable use of a product.'" (brackets omitted) (quoting *Delphen v. Dep't. of Transp. & Dev.*, 657 So. 2d 328, 333 (La. App. 4th Cir. 1995))); *Kampen v. Am. Izuzu Motors, Inc.*, 157 F.3d 306, 309 (5th Cir. 1998) (en banc) ("It is clear that by adopting the reasonably anticipated use standard, the Louisiana Legislature intended to narrow the range of product uses for which a manufacturer would be responsible."). Finally, although it is undisputed that Hebert suffered damages, as noted above, it is not undisputed that the multi-piece wheel was unreasonably dangerous. *See* LA. REV. STAT. ANN. § 9:2800.54.A (noting that damages must be "proximately caused by a characteristic of the product that renders the product unreasonably dangerous").

**B. The district court did not err in denying Hebert's motion for a new trial.**

Hebert argues that the district court erred in denying his motion for a new trial because the district court should not have admitted evidence that he tested positive for methamphetamine. "We review the denial of a motion for a new trial for an abuse of discretion." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 614 (5th Cir. 2018). The district court determined that the evidence was "relevant in that it relates to treatment sought as a result of the injuries that are the subject of this case." The district court concluded that Dr. Bozzelle, who administered the test, could testify as to the positive drug screen because he "is a pain management physician, who in the regular course of his treatment of patients, would require drug screens to determine the

No. 18-30812

nature and extent of the treatment that he would prescribe." Hebert challenges the admission on two grounds. First, he argues that evidence of the drug test should not have been admitted at all because Dr. Bozzelle was not qualified to discuss toxicology reports. Second, Hebert argues that Titan used evidence of the drug test to imply that Hebert took illegal drugs and acquired drugs illegally, prejudicing his case.

We review the admission of expert testimony for an abuse of discretion and grant the district court broad discretion in determining whether to admit expert testimony. *Williams,* 898 F.3d at 615. Evidentiary rulings are also reviewed for an abuse of discretion. *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 992 (5th Cir. 2008). "We will reverse a judgment for an evidentiary ruling only if it affected the substantial rights of the parties." *Id.* "The party asserting the error has the burden of proving that the error was prejudicial." *Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015).

As to Hebert's first argument, even assuming arguendo that Dr. Bozzelle was not qualified to render toxicology opinions, Dr. Bozzelle did not do so. His testimony regarding Hebert's drug test concerned his reasons for administering the test, the process for confirming the test results, and his description of the lab results. As Hebert pointed out, Dr. Bozzelle was qualified to testify about what the lab results said. Thus, we conclude that the district court did not abuse its discretion.

Hebert's second argument also fails. The district court has broad discretion to weigh the relevance of evidence against its potentially prejudicial effect and determine if the probative value is *substantially* outweighed by its prejudicial effect. FED. R. EVID. 403; *see United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 377 (5th Cir. 2017) (noting that district courts have broad discretion in making Rule 403 determinations). Even if Titan's questions about Hebert's drug test results implicate use of illegal drugs, Hebert has not

proved that the prejudicial effect substantially outweighed the probative value. Additionally, Hebert has pointed only to speculation that the jury must have disregarded evidence concerning the viability of Hebert's LPLA claim and found in favor of Titan because it believed Hebert had a drug problem. But Dr. Bozzelle testified that he did not assume Hebert had a substance abuse problem because of his drug test results, and Dr. Weir testified that the result for methamphetamine could have been a false positive, such that any prejudicial effect was mitigated. We have pointed to the evidence that supports the verdict in favor of Titan. Thus, we conclude the district court did not abuse its discretion in denying the motion for new trial.

We AFFIRM.