United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 17, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 04-30007

MARILYN HALEY,

Plaintiff-Appellant,

versus

ALLIANCE COMPRESSOR LLC and COPELAND CORP.,

Defendants-Appellees.

Appeal from the United States District Court
For the Western District of Louisiana

Before DeMOSS, STEWART, and CLEMENT, Circuit Judges.

DeMOSS, Circuit Judge:

Plaintiff-Appellant Marilyn Haley ("Haley") appeals the district court's grant of final judgment in favor of Defendants-Appellees Alliance Compressor LLC and Copeland Corp. (together, "Alliance"), based on its finding that Haley did not present a genuine issue of material fact supporting her constructive discharge, the basis for her Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, claims. For the reasons stated below, we AFFIRM.

## BACKGROUND

Starting May 11, 1999, Haley was employed in the Human Resources ("HR") Department at Alliance Compressors LLC, a joint venture manufacturer of air-conditioning compressors located in Natchitoches, Louisiana. Copeland Corp. is one company involved in the joint venture. The other key personnel involved in this case are: Jeff Risinger ("Risinger"), HR manager and Haley's immediate boss for most of her time there; Mark Schuller ("Schuller"), a fellow HR leader; Steve Hokky ("Hokky"), Plant Manager; and Bob Anderson ("Anderson"), Vice-President of the HR Department at Copeland Corp.

When Alliance hired Haley, she was assigned as leader of the machining business unit while Schuller was responsible for the assembly business unit. Haley's responsibilities for her unit included staffing, employee relations, training, and all daily activities in those areas. On performance evaluations conducted by Risinger in 1999 and 2000, Haley was evaluated as meeting or exceeding job expectations. In October 2000, an employee survey was conducted by Emerson Electric Co., the parent company of Copeland Corp. These results came out in December 2000 and showed employee misgivings about the HR department, including some individual negative comments directed toward both Haley and Schuller. Around January or February 2001, Alliance conducted feedback sessions with employees at the plant. From these,

2

Alliance developed a plan of action to improve the performance of the HR group. Risinger reorganized the department, with Schuller to be in charge of training and Haley to oversee recruitment. At the time, another HR employee, Joanna Deloch, was handling employee relations.

About April 23, 2001, Risinger met with Haley to discuss some deficiencies in her performance. At the time, Risinger documented the meeting with informal, handwritten notes. About June 18, 2001, Haley completed a temporary disability claim form; the next day she saw her physician who diagnosed a stress/anxiety disorder, which Haley claimed arose from her employment. Haley's doctor recommended that Haley take a leave of absence from work from June 25, 2001, until August 20, 2001. Haley then completed and submitted an employee request for medical leave form, requesting leave for the time period stated by her doctor. On June 22, 2001, Alliance approved Haley's request for leave under the FMLA; Haley commenced her leave on June 25, 2001. While Haley was out on leave, Risinger approved a merit increase in her salary, effective August 6, 2001.

Risinger, Hokky, and Anderson felt frustrated that Haley was out on leave. Sometime in July 2001, about three weeks into Haley's leave, Anderson contacted Risinger about the alignment of the HR department. Issues relating to Haley's return were discussed – Anderson claims they talked about preparations for Haley's return and what performance issues she still needed to work

3

on.  Risinger presents a different version.  He stated that Anderson told him to call Haley while she was on leave and inform her that her job had been eliminated, "that she didn't have a job to come back to, basically."  Risinger said he objected because firing Haley might be considered discriminatory and in violation of the FMLA.  Anderson agreed.  Risinger stated that Anderson called him again after consulting an employment attorney and asked him for written documentation of Haley's work performance.

Risinger prepared the requested memo documenting the April 23, 2001, meeting he had with Haley and submitted it to Anderson on July 29, 2001.  This memo included nine specific areas of improvement for Haley to work on.  Risinger stated none of these areas was an issue anymore and Haley had left for leave in good standing, while Anderson claims not all the performance issues had been resolved.  On August 10, 2001, Risinger submitted his letter of resignation, effective August 24, 2001.  Haley returned to work on August 20, 2001.  Her doctor recommended she resume no more than 40-hour work weeks, and Alliance changed her status from salaried, exempt to salaried, full-time.  In the meantime, Schuller had also resigned and Steve Ritcheson had been brought on as HR manager of employee relations.  Hokky and Anderson assumed Risinger's supervision of the HR department; Risinger's role in management became insubstantial and disengaged after he submitted his resignation.

Anderson and Hokky confronted Haley with the memo and the alleged job deficiencies on August 20, 2001, and advised her of the importance of making improvements in her performance. Haley did not know where this had come from, so she went to Risinger to ask him about the circumstances of this meeting. Risinger told her about Hokky and Anderson not being happy that she had taken leave and about Anderson's aborted plan to have Risinger tell her that her job had been eliminated. On August 23, 2001, Anderson and Hokky met with Haley to discuss Alliance's expectations about her work performance and informed her that she needed to improve in the outlined areas of concern or she faced termination. They gave her a letter to that effect and a performance plan.

Haley stated that any and all of her attempted actions at work were now closely monitored and micromanaged by Hokky and his secretary Donna Pearce, who Haley says was proposed to replace her. Haley stated that she observed at least three HR department meetings that took place without her; she could see this because the meeting room had glass walls. On one occasion, she received very late notice of a scheduled telephone conference with Anderson. When she arrived to find the meeting in progress, Hokky said sarcastically, "Oh, did we fail to tell you about the meeting?" and everyone sniggered.

Haley submitted her letter of resignation on September 11, 2001. Haley filed this suit in district court on September 6, 2002, alleging that Alliance had violated the FMLA, by (1) denying

or interfering with her protected FMLA right to be restored to her pre-leave job and (2) retaliating against her for using approved leave under the FMLA. Haley sought back pay. Alliance filed its motion for summary judgment on August 22, 2003. The district court entered a final judgment on December 8, 2003, in favor of Alliance, finding there was no genuine issue of material fact as to constructive discharge and Alliance was entitled to judgment as a matter of law. The court's written ruling made clear it did not consider evidence of Alliance's intent. Haley timely appealed.

## DISCUSSION

This Court reviews a district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Priester v. Lowndes County*, 354 F.3d 414, 419 (5th Cir. 2004); *see also Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (holding same in employment discrimination case). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When making its determination, the court must draw

all justifiable inferences in favor of the nonmoving party. *Bodenheimer*, 5 F.3d at 956.

Under the FMLA, an eligible employee is entitled to take up to 12 work weeks of leave in a 12-month period when, *e.g.*, the employee has a serious health condition that makes her unable to perform the duties of her position. 29 U.S.C. § 2612(a)(1)(D); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). After a qualifying absence, the employer must restore the employee to the same position previously held by the employee before taking leave under the FMLA or a comparable position, with equivalent pay, benefits, and working conditions. 29 U.S.C. § 2614(a)(1); *Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999). These comprise the prescriptive or substantive FMLA rights; claims for violations of these rights invoke entitlement or interference theories and are brought under § 2615(a)(1). The proscriptive FMLA rights include an employee's right not to be discriminated or retaliated against for having exercised the right to take FMLA leave. Claims for violations of these rights are brought under § 2615(a)(2). *Bocalbos*, 162 F.3d at 383. These proscriptive FMLA provisions create a cause of action analogous to the actions for discrimination and for retaliation that are found in Title VII and the other discrimination statutes. Haley asserted claims for both prescriptive and proscriptive FMLA violations in her complaint.

7

Here, Alliance did not refuse to reinstate Haley to her pre-leave position nor did it terminate her after she returned. What Haley alleged is that Alliance's interference with her working conditions upon her return from leave (alleged prescriptive violation) and Alliance's retaliation against her for taking such leave (alleged proscriptive violation) compelled her to resign. Thus, constructive discharge is the basis for Haley's FMLA claims. The district court granted summary judgment for Alliance because it found Haley did not provide material evidence of constructive discharge.

Constructive discharge occurs when an employee has quit her job under circumstances that are treated as an involuntary termination of employment. *Young v. Southwestern Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975). This Court has explained:

> The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.

*Jurgens v. EEOC*, 903 F.2d 386, 390 (5th Cir. 1990) (citation omitted). Whether an employee would feel forced to resign is case- and fact-specific, but this Court considers the following factors relevant, singly or in combination:

> (1) [D]emotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or

8

degrading work; (5) reassignment to work under a younger [or less experienced/qualified][1] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (citations omitted and second alteration in original). The test that Haley must meet is an objective, "reasonable employee" test: whether a reasonable person in the plaintiff's shoes would have felt compelled to resign. *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 n.19 (5th Cir. 1994). "Proof is not required that the employer impose these intolerable working conditions with the specific intent to force the employee to resign." *Jurgens*, 903 F.2d at 390. However, "[c]onstructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Brown*, 237 F.3d at 566. Aggravating factors used to support constructive discharge include hostile working conditions or the employer's invidious intent to create or perpetuate the intolerable conditions compelling the resignation. *Jurgens*, 903 F.2d at 393 n.10; *see also* *Brown*, 237 F.3d at 566 (noting that "[d]iscrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge"). The

---

[1]Original factor reads "a younger supervisor"; however, this is not an age discrimination case, so we add language to this factor to fit a more general working context.

9

resigning employee bears the burden to prove constructive discharge.  *Jurgens*, 903 F.2d at 390-91.

**Whether the district court erred in granting summary judgment in favor of Alliance.**

Haley's main contention is that the district court erred in its assessment of the summary judgment evidence, which consisted of various sworn affidavits and depositions, because it refused to properly consider evidence which demonstrated Alliance's intent to remove Haley from her HR position either by plan of outright termination or constructive discharge, when it was applying the reasonable employee test.  Haley argues that knowledge of employer intent is relevant to whether a reasonable person in Haley's position would have felt pushed into resignation.

Haley also maintains she produced sufficient evidence that Alliance, acting through Hokky and Anderson, created a work environment designed specifically either to set her up for termination or to compel her to resign by altering the terms and conditions of her employment.  Haley submits Alliance manifested its intent to bring about her removal by its discriminatory treatment of her through hostile working conditions.  These conditions included Alliance management fabricating deficiencies in Haley's work performance and setting an overly strict performance plan for her; threatening to fire her if she did not meet her teamwork goals; micromanaging her; excluding her from HR Department meetings; and ridiculing her in front of her coworkers.  Thus,

10

Haley argues her claims should not have been dismissed because material questions of fact remain as to whether she was constructively discharged from her position at Alliance.

Alliance agrees with the district court, which found "none of the evidence presented by plaintiff satisfies the objective test for a constructive discharge." Alliance argues the district court correctly precluded evidence of employer intent because it was analyzing Haley's claims at the stage of the reasonable employee test, and Haley had not advanced to the stage where the court would consider aggravating factors such as invidious intent. Moreover, the district court correctly decided that the actions Haley claimed Alliance perpetuated would not have made a reasonable employee in her situation involuntarily resign.

Alternatively, if this Court does choose to accept as true evidence that the district court did not consider when looking at whether there is a genuine issue of material fact under the reasonable employee test, Alliance stresses it never terminated Haley or followed through on any plan to eliminate her position. Nor can it be faulted for documenting Haley's ongoing deficiencies and forming a performance plan for her when the entire HR department was in a time of reorganization following the Emerson survey and report. Haley's subjective belief that she was a victim of retaliatory discrimination by Alliance does not create any material fact dispute. And Alliance completely discounts any of Haley's evidence regarding any difficulties she had upon returning

11

from leave in terms of training, expansion of job duties, and miscommunication about meetings because they were only business decisions in a time of reorganization where many HR employees were affected by changes.

Whether the reasonable employee test may consider employer intent.

Here, the district court interpreted FMLA law and concluded that "evidence of the employer's intent is not relevant if the plaintiff does not satisfy its burden to prove the objective inquiry of whether a reasonable person would feel compelled to resign." This is a facially incorrect application of the reasonable employee test; the district court thus erred by excluding all evidence of Alliance's intent when considering whether Haley had presented a genuine issue of material fact on constructive discharge. This Court stated in **Jurgens**: "[A]lthough we have adopted a reasonable-employee analysis, manifestations of the apparent intent of the employer are relevant to this analysis." 903 F.2d at 393 n.10. This statement plainly contemplates considering evidence of employer intent when the court determines whether a reasonable employee would have felt compelled to resign. Determining whether supporting aggravating factors exist is not a separate analysis from the reasonable employee test; it is part and parcel of the same inquiry. *See **id.***

Therefore, the correct question to ask here is whether a reasonable employee who received similar information of what events

12

had transpired while she was on leave, including the excluded evidence construed as showing employer intent, and otherwise experienced what Haley did after her return to work at Alliance would have felt compelled to quit.

<u>Whether Haley has presented a genuine issue of material fact on constructive discharge.</u>

After considering all the summary judgment evidence, even construing all inferences in Haley's favor, we determine the answer is no. The evidence Haley presented, even including that which the district court incorrectly excluded, does not establish a genuine issue of material fact on constructive discharge based on the various factors of the reasonable employee test.

This Court has applied the reasonable employee test several times. In *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 772 (5th Cir. 2001), a FMLA case, we affirmed the district court's grant of summary judgment to the employer on constructive discharge, where the resigning employee had been placed on a different shift accompanied by a loss in compensation and benefits. In *Brown v. Bunge Corp.*, 207 F.3d 776, 782-83 (5th Cir. 2000), we affirmed the district court's grant of summary judgment to the employer on constructive discharge, where the resigning employee showed he was demoted and had fewer job responsibilities. In *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 741 (5th Cir. 1993), we affirmed the district court's grant of summary judgment to the employer, where the resigning employee's embarrassment after being

13

singled out and admonished at an awards banquet was not sufficient to show constructive discharge. In **McKethan**, even if the awards incident was part of a "scheme to force [the resigning employee] to retire," a reasonable employee "would have demanded an apology or otherwise attempted resolution." **Id.** In **Bozé v. Branstetter**, 912 F.2d 801, 805-06 (5th Cir. 1990), we affirmed the district court's grant of summary judgment to the employer on constructive discharge, where the resigning employee suffered a poor performance evaluation and loss of responsibilities similar to a demotion. Again, in **Bozé**, we noted a reasonable employee had other options, such as pursuing an internal grievance process, before choosing to leave his job. **Id.** at 805. In **Jurgens**, 903 F.2d at 392-93, we affirmed the district court's grant of summary judgment to the employer on constructive discharge, where the resigning employee was demoted as part of a nondiscriminatory reorganization, even though the employer had previously discriminatorily denied him a promotion.

In contrast, in **Stephens v. C.I.T. Group/Equipment Financing, Inc.**, 955 F.2d 1023, 1027-28 (5th Cir. 1992), we affirmed a jury verdict on constructive discharge, where the resigning employee had not only been demoted, but also faced significant reductions in salary and responsibilities, and was repeatedly questioned by his younger successor (and current supervisor) as to when he was going to quit.

14

Haley's situation is analogous to those cases where this Court has affirmed summary judgment for the employer on constructive discharge. Haley contends she faced humiliation and ostracization from her peers, in addition to an overly severe performance plan and micromanagement by her superiors. She also produced evidence, which the district court incorrectly excluded, tending to show her superiors' intent to remove her from her job while she was on leave. However, upon her actual return from FMLA leave, Haley (1) was not demoted; (2) received a three percent merit salary increase approved while she was on leave; (3) had similar, more focused job responsibilities; (4) was not assigned menial or degrading work; (5) was reassigned to Hokky and Anderson because Risinger had resigned; and (6) was favorably accommodated when Alliance changed her schedule to 40-hour work weeks. Therefore, the only factor Haley can rely on to meet the reasonable employee test is "badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation." **Brown**, 237 F.3d at 566.

While Haley may have been embarrassed by Hokky's sarcastic comment and her peers' response during the late-noticed meeting, similar to the resigning employee singled out in **McKethan**, 996 F.2d at 741, this treatment does not constitute the type of badgering or harassment designed to encourage the employee's resignation that is required for constructive discharge. Also, having one's work micromanaged may be unpleasant but does not constitute a "greater

15

degree of harassment than that required by a hostile environment claim." **Brown**, 237 F.3d at 566. Plus, a reasonable employee who genuinely felt these working conditions were upsetting to the point of intolerable would have attempted resolution of these concerns before choosing to quit after just over two weeks back on the job. See **McKethan**, 996 F.2d at 741; **Bozé**, 912 F.2d at 805. Moreover, there is no evidence that anyone at Alliance ever inquired of Haley when she was going to quit.

Although the district court erred in excluding evidence of Alliance's intent, the court ultimately correctly concluded the lack of a genuine issue of material fact on constructive discharge. We affirm on that ground.[2]

### CONCLUSION

Having carefully reviewed the record and the parties' respective briefing and arguments, and for the reasons set forth above, we conclude the district court was correct to grant Alliance's motion for summary judgment and dismiss Haley's FMLA claims. Therefore, we AFFIRM.

**AFFIRMED.**

---

[2]See **Holtzclaw v. DSC Communications Corp.**, 255 F.3d 254, 258 (5th Cir. 2001) ("We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court.").

16