# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20403

United States Court of Appeals
Fifth Circuit

**FILED**

May 12, 2017

Lyle W. Cayce
Clerk

JARREL CALDWELL,

> Plaintiff–Appellant,

v.

LILLIAN LOZANO; VICTORIANO TREVINO; CARLOS DE ALEJANDRO; HARRIS COUNTY,

> Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-3044

Before REAVLEY, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Jarrel Caldwell sued Harris County and three police officers pursuant to 42 U.S.C. § 1983, alleging that his First Amendment rights were violated because his protected speech motivated an adverse employment decision, that he was subjected to racial discrimination, and that he was subjected to a hostile

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20403

work environment based on race. The district court granted summary judgment in favor of the defendants. We affirm.

**I**

Jarrel Caldwell was a motorcycle division supervisor in the Harris County Precinct 6 Constable's Office. He brought suit against Lillian Lozano, an Administrative Lieutenant; Carlos De Alejandro, a Captain and Caldwell's direct supervisor; Victor Trevino, the Precinct 6 Constable; and Harris County (Appellees). Caldwell is African-American, and Lozano, De Alejandro, and Trevino are Hispanic. Caldwell claims that Appellees violated the First Amendment by constructively discharging him in retaliation for his protected speech, violated his liberty interest by constructively discharging him and damaging his reputation, and violated the Equal Protection Clause by racially discriminating against him and creating a hostile work environment.

Before Caldwell's alleged constructive discharge, the Constable's Office began receiving reports of a rogue motorcycle officer who was harassing drivers. Caldwell, as head of the motorcycle unit, investigated the incident. He initially concluded that the suspected culprit, who was under Caldwell's command, was not responsible. Though Caldwell claims to have maintained open communication with his supervisors regarding the investigation, Appellees allege that Caldwell attempted to protect the suspected officer by failing to identify him. Trevino initiated an investigation of Caldwell and claimed that Caldwell was uncooperative with the investigation. The Constable's Office issued a series of questions to Caldwell in August and September of 2013, which Appellees allege Caldwell answered evasively. De Alejandro subsequently attempted to notify Caldwell to ask him additional questions.

On the same day that De Alejandro attempted to notify Caldwell that additional questions required a response, Caldwell left work to see a physician,

No. 16-20403

claiming effects from his hypertension medication. He never returned to work. In essence, Caldwell asserts that his physician would not clear him to return to work and that he properly informed his supervisor, De Alejandro, of his inability to return to work. Caldwell states he placed a Family Medical Leave Act request letter in the personal boxes of De Alejandro, Trevino, and Chief Deputy Carolyn Lopez. De Alejandro told Caldwell that his leave request would not be honored because Caldwell had failed to state an end date. On October 8, Caldwell emailed De Alejandro a copy of a physician's note excusing Caldwell from work until October 27. As Caldwell admits, the "2" in "27" had been changed from a "1," but Caldwell alleges the physician's assistant changed the number.

While Caldwell was on this contested medical leave, De Alejandro wrote a memorandum to Trevino requesting to have Caldwell removed from Precinct 6 for insubordination and absence without leave. De Alejandro stated that he had had a difficult time confirming Caldwell's medical leave. De Alejandro claimed that he and Caldwell agreed to meet so that Caldwell could submit a physician's note, but he asserted that Caldwell did not "report to duty." After receiving the altered physician's note on October 8th, the Constable's Office claims to have contacted the physician's office to learn whether the physician had excused Caldwell from work only until October 17.

On Friday, October 18, Chief Deputy Lopez sent Caldwell a letter informing him that the Constable planned to terminate him on Monday. The letter concluded with "[i]f you have any reasons why he should not do so, please let me know immediately in writing and I will convey them to the Constable." The letter also stated that Trevino had planned to terminate Caldwell for job abandonment because Caldwell had had unexcused absences from September 26 through October 5. However, the letter stated that "[s]ubmitting a false doctor's note alone is grounds for termination."

3

No. 16-20403

Caldwell submitted a resignation letter dated October 18, citing in part "professionally unorthodox events by Pct. 6 command," events which "exacerbate[d]" his condition.  Before submitting his resignation letter, Caldwell had planned to transfer to Precinct 1, whose Constable had offered Caldwell a position.  Caldwell accused Lozano of attempting to undermine his transfer by misrepresenting to Precinct 1 that he was under both an internal and a criminal investigation.

Caldwell alleges that Appellees retaliated against him for two instances of protected speech.  First, Caldwell alleges as protected speech his interviews with a District Attorney Investigator named Jimmy Jones, who was investigating Trevino for possible illegal campaign practices.  Jones interviewed at least 165 individuals from Precinct 6 and interviewed Caldwell at least twice, in December of 2011 and August of 2012.  According to Caldwell's deposition, Caldwell did not reveal any illegal campaign practices during the interviews, and Jones stated that Caldwell did not provide any information harmful to Trevino.  Caldwell now contends that he provided information regarding illegal campaign practices to Jones.

Second, Caldwell alleges that he spoke out against "disparate treatment of African-American employees at Precinct 6," giving six specific instances. Caldwell alleges that (1) he reported and opposed Lozano's act of reprimanding and ultimately suggesting termination for an African-American officer she accused of working an extra job on sick leave; (2) he opposed Lozano and Trevino's decision not to reprimand a white officer whom Caldwell accused of insubordination and harassment of citizens; (3) he reported to Jones that Lozano had instructed a deputy to follow an African-American officer to find a reason to terminate the African-American officer; (4) he encouraged an African-American officer to file an EEOC complaint against Lozano for alleged discriminatory treatment and volunteered to testify for the officer; (5) he

4

No. 16-20403

encouraged a female African-American officer to file a complaint against De Alejandro for sexual harassment and then encouraged her to appeal her dishonorable discharge; and (6) he accused Lozano of encouraging a Hispanic employee to file a false complaint against him.

Caldwell also notes two specific discriminatory statements Lozano allegedly made. First, he alleges that Lozano told De Alejandro that "[a]s long as I am in power there will never be a Black supervising Hispanics." Second, when a deputy told Lozano that he worked under Caldwell, she allegedly responded, "Not for long."

Caldwell filed this suit pursuant to 42 U.S.C. § 1983, and Appellees filed motions for summary judgment. The district court ruled from the bench at the summary judgment hearing, granting summary judgment in favor of Appellees as to all of Caldwell's claims. Caldwell moved for a new trial to offer new evidence—specifically, declarations from the assistant at the physician's office and three statements by officers. He also moved to amend his complaint to include Title VII claims. The district court denied the motion for new trial because the evidence was not "newly discovered evidence" and denied the motion to amend because it saw "no indication that [Caldwell's] allegations would have fared better . . . under Title VII." Caldwell appealed.

## II

This court reviews "a grant of summary judgment de novo, applying the same standard as the district court."[1] "[S]ummary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[2]

---

[1] *Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013).

[2] *Id.* (quoting FED. R. CIV. P. 56(a)).

No. 16-20403

## III

Caldwell alleges that Appellees violated his First Amendment rights by retaliating against him for his protected speech.  For a public employee to prevail on a First Amendment speech-retaliation claim, the employee must establish

> (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct.[3]

Caldwell contends he engaged in two types of protected speech: complaining of discriminatory behavior within the Constable's Office and speaking as a witness in the criminal investigation of Constable Trevino.  He alleges he suffered an adverse employment action when Appellees retaliated against him by constructively discharging him.

We need not reach the last three elements of this test because we conclude that Caldwell has failed to allege an adverse employment action. Adverse employment actions for the purposes of § 1983 "can include discharges, demotions, refusals to hire, refusals to promote, . . . reprimands," and "a transfer, because it may serve as a demotion."[4]   This court has "recognized that constructive discharge may be an appropriate basis for a section 1983 action."[5]

We have used a "reasonable employee test" to determine if an employer's actions constituted a constructive discharge.[6] To establish a constructive discharge, an employee "must offer evidence that the employer made the

---

[3] *Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 815 (2017).

[4] *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999).

[5] *Kline v. N. Tex. State Univ.*, 782 F.2d 1229, 1234 (5th Cir. 1986).

[6] *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008).

employee's working conditions so intolerable that a reasonable employee would feel compelled to resign."[7]  A plaintiff may also be "constructively discharged if the employer gives the employee an ultimatum to quit or be fired."[8]  We have previously determined that no constructive discharge took place when a "reasonable employee had other options . . . before choosing to leave his job"[9] and that a "reasonable employee attempts resolution of employment concerns before quitting."[10]

In this case, Chief Deputy Lopez sent Caldwell a letter detailing why Constable Trevino intended to terminate Caldwell's employment.  The letter recited facts that, from Trevino's perspective, constituted job abandonment, for which Trevino was "about to terminate [Caldwell's] employment."  The letter also alleged that Caldwell had submitted a false or forged physician's note purporting to excuse absences from work and that "[s]ubmitting a false doctor's note alone is grounds for termination."  The letter ended by stating that Constable Trevino planned to terminate Caldwell, but it informed Caldwell that "[i]f you have any reasons why he should not do so, please let me know immediately in writing and I will convey them to the Constable."

Caldwell did not respond and did not offer any reasons why Trevino should not terminate him.  He did not "attempt[] resolution" of Trevino's concerns or pursue options besides resignation,[11] even though Lopez's letter gave him that opportunity.  Instead, Caldwell responded with a written resignation letter dated the same day he received Lopez's letter.

---

[7] *Id.* (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).

[8] *Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336, 338 (5th Cir. 2014).

[9] *Haley v. All. Compressor LLC*, 391 F.3d 644, 652 (5th Cir. 2004) (citing *Bozé v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990) (per curiam)).

[10] *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 343 (5th Cir. 2005) (citing *Haley*, 391 F.3d at 652).

[11] *See Haley*, 391 F.3d at 652 (quoting *McKethan v. Tex. Farm Bureau*, 996 F.2d 734, 741 (5th Cir. 1993)).

No. 16-20403

Caldwell was not given an "ultimatum to quit or be fired."[12]  The letter gave him notice of Trevino's intent to terminate him as well as an opportunity to explain why Trevino should not do so.  By resigning under these circumstances, Caldwell does not allege a constructive discharge.

To the extent Caldwell argues more generally that working conditions were so intolerable that a reasonable person would resign, that claim is not supported by evidence that raises a material fact issue.  "To prove constructive discharge, a party must show that 'a reasonable party in his shoes would have felt compelled to resign.'"[13]  "The claim requires a 'greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment.'"[14]  This court has held that the following events are relevant in determining if a reasonable employee would feel compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.[15]

Because, as discussed below, Caldwell's allegations do not state a prima facie case of a hostile work environment claim, we conclude that his alleged work conditions were not so intolerable that a reasonable person would resign.

Caldwell's retaliation claim rests on his alleged constructive discharge. Because we conclude that his alleged facts fail to support a claim of

---

[12] *Perret*, 770 F.3d at 338.

[13] *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011) (quoting *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)).

[14] *Id.* (quoting *Benningfield*, 157 F.3d at 378).

[15] *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008) (quoting *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 481 (5th Cir. 2008)).

No. 16-20403

constructive discharge, the district court did not err in granting summary judgment on this claim.

## IV

Caldwell asserts that Appellees violated the Equal Protection Clause because he was subjected to racial discrimination and a race-based hostile work environment.  For § 1983 claims asserting racial discrimination in the employment context, the court has borrowed the elements of a Title VII claim of racial discrimination,[16] as "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII."[17]  To establish a prima facie case of racial discrimination in employment, an employee must demonstrate that he

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.[18]

As considered above, Caldwell has failed to raise a fact question regarding constructive discharge and therefore has not raised a fact question as to whether he suffered an adverse employment action.  To the extent that Caldwell bases his racial discrimination claim on a different adverse employment action, he has failed to allege that he was "replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group."[19]

---

[16] *Lee v. Conecuh Cty. Bd. of Educ.*, 634 F.2d 959, 962 (5th Cir. Jan. 1981) ("Logic dictates that the *McDonnell Douglas* factors may be used to establish a prima facie case in cases of racially motivated employment discrimination brought under section 1983 whether or not Title VII is used as a parallel remedy.").

[17] *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (quoting *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)).

[18] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam).

[19] *See id.*

Caldwell points to the lack of discipline De Alejandro and Lopez faced after allegedly wrongfully accusing Caldwell. He also cites the lack of discipline for an officer who did not obey orders. "We require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'"[20] Although "[w]e do not . . . interpret 'nearly identical' as synonymous with 'identical,'"[21] Caldwell's suggested comparators were not accused of conduct that was similar—much less nearly identical—to his.

We also conclude that Caldwell has not established a prima facie race-based hostile work environment claim. Under our hostile-work environment test, Caldwell must show that

> (1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[22]

If the claim is that the supervisor harassed the employee, the plaintiff need not satisfy the fifth element.[23] "Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[24]

Caldwell provides few specific instances of harassment. He alleges that individuals heard Lozano state that an African American would never

---

[20] *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Ref. Co.,* 924 F.2d 93, 97 (5th Cir. 1991)).

[21] *Id.*

[22] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

[23] *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

[24] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey*, 286 F.3d at 268).

supervise a Hispanic at Precinct 6 and that Caldwell would not be at Precinct 6 much longer.  He also contends that Lozano told an employee to file a false complaint against Caldwell.  His other examples of alleged harassment are actions Appellees took while Caldwell was on contested sick leave, such as De Alejandro issuing a disciplinary recommendation and Lopez sending the final letter.  These instances do not rise to the necessary level of pervasiveness to alter the conditions of Caldwell's employment and create an abusive working environment.[25]

## V

Caldwell claims Appellees violated the Fourteenth Amendment by infringing his liberty interest when they caused his termination and stigmatized his career.  An employee's Fourteenth Amendment liberty interest is infringed if he is "discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities."[26]  To prevail on this claim, Caldwell must meet the seven elements of the "stigma-plus-infringement" test by showing:

> (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.[27]

The district court dismissed the claim, determining that Caldwell did not request a hearing and that Appellees did not deny a hearing.  We agree with the district court.  "Though an employee need not use the term 'name-clearing hearing' to satisfy the sixth element of the stigma-plus-infringement test, the

---

[25] *See Ramsey*, 286 F.3d at 268.

[26] *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006) (quoting *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. Nov. 1981)).

[27] *Id.*

No. 16-20403

employee must still petition the employer in a manner that can be construed as asking for an opportunity to clear his name."[28]  Caldwell acknowledged in his deposition that he did not request a hearing.  Instead, he now claims he attempted to clear his name by sending notes from his physician to the Precinct and responding to the charges in his notice of resignation.  These acts do not amount to petitioning his employer for the opportunity to clear his name.

Caldwell also implies that he was owed a pre-deprivation hearing because he had a property right in the legitimate expectation of continued employment by virtue of Texas Government Code Section 614.023(c).  The statute requires that certain actions be taken before disciplining a police officer on the basis of a complaint filed against the officer.[29]  However, this court recently determined that the statute did not create a property right for police officers.[30]  We accordingly reject Caldwell's implied argument for a pre-deprivation hearing.

## VI

Finally, Caldwell appeals the district court's denial of his motions for a new trial and for leave to file an amended complaint.  Through these motions, Caldwell sought to introduce additional evidence and add Title VII claims to his complaint.  His additional evidence contained a declaration by the assistant at the physician's office, who stated that no one from the Constable's Office had contacted her, and three statements by police officers corroborating Caldwell's version of events.  The district court properly analyzed Caldwell's motion for a new trial as a Rule 59(e) motion.[31]  The court denied the motion, determining

---

[28] *Id.*

[29] TEX. GOV'T CODE ANN. § 614.023(c) (West).

[30] *Stem v. Gomez*, 813 F.3d 205, 213 (5th Cir. 2016) (holding that the law "require[s] some action to be taken before termination of employment can occur, but no property right is created by that requirement").

[31] *Patin v. Allied Signal, Inc.*, 77 F.3d 782, 785 n.1 (5th Cir. 1996).

12

that Caldwell's additional evidence was not "newly discovered evidence" and would not have altered the outcome. The court also denied the motion to amend, noting that the Title VII claims in the motion would likely fail for the same reasons as the § 1983 claims.

Our standard of review for a Rule 59 motion to reconsider "depends on whether the district court considered materials attached to the motion for reconsideration which were not previously provided to the court when it granted summary judgment."[32] "If the materials were considered by the district court, and the district court still grants summary judgment, the appropriate appellate standard of review is de novo."[33] "However, if the district court refuses to consider the materials, the reviewing court applies the abuse of discretion standard."[34] The district court properly denied the motion under either standard.

"Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'"[35] "We have held that an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration."[36] Here, the "underlying facts were well within [Caldwell's] knowledge prior to the district court's entry of judgment,"[37] and Caldwell provides no legitimate justification for not presenting the additional evidence earlier. His primary argument is that Appellees waited until the summary judgment hearing to reveal that they had confirmed the note was

---

[32] *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017).

[33] *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004)).

[34] *Id.* (quoting *Templet*, 367 F.3d at 477).

[35] *Templet*, 367 F.3d at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)).

[36] *Id.* (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991)).

[37] *Id.*

altered by contacting the physician's office, and, therefore, the court should allow him to introduce the declaration of the physician's assistant. However, Caldwell knew throughout the proceedings in the district court that whether he had altered the physician's note was at issue, and Lopez's letter to Caldwell stated "we contacted your doctor's office to authenticate the note." Caldwell provides no justification for not presenting evidence earlier. Further, even when the district court considered the additional evidence, it determined that the evidence would not have altered the outcome, as the evidence largely corroborated Caldwell's existing allegations. The district court's decision was not "manifestly unjust in law or fact," and the court did not "ignore newly discovered evidence."[38]

Nor did the district court abuse its discretion by denying Caldwell's motion to add Title VII claims. "In cases where a party seeks to amend her complaint after entry of judgment, 'we have consistently upheld the denial of leave to amend where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits ruling.'"[39] Caldwell does not attempt to explain why he could not have reasonably raised the new matter prior to the district court's decision. Moreover, at the summary judgment hearing, Caldwell's counsel repeatedly insisted that the case was not a Title VII case. For these reasons, we hold that the district court did not abuse its discretion.

\* \* \*

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[38] *Id.*

[39] *Vielma v. Eureka Co.*, 218 F.3d 458, 468 (quoting *Briddle v. Scott*, 63 F.3d 364, 379 (5th Cir. 1995)).