

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

May 16, 2018

The Honorable Rafael Anchia
Chair, Committee on International Trade
   and Intergovernmental Affairs
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. KP-0205

Re: Authority of an individual commissioner of the Railroad Commission to unilaterally terminate or hire an Executive Director for the Commission (RQ-0203-KP)

Dear Representative Anchia:

You ask five questions related to the unilateral authority of an individual commissioner of the Railroad Commission (the "Commission") and whether certain actions by an individual commissioner violated the Open Meetings Act.[1] Your questions arise from events occurring at the Commission in September of 2017 regarding employment of its Executive Director. Request Letter at 2. Submissions to this office in response to your request demonstrate significant disagreement about the facts surrounding these events.[2] This office does not resolve disputed questions of fact through the opinion process. Tex. Att'y Gen. Op. Nos. GA-1033 (2013) at 1, JM-1098 (1989) at 3. Instead, attorney general opinions advise authorized requestors about the status of the law. Tex. Att'y Gen. Op. Nos. KP-0124 (2016) at 2, GA-0630 (2008) at 4. Thus, in answering your questions, we advise about the relevant laws applicable to the Commission and its governance without addressing or determining the underlying facts involved.

Your first, second, and fourth questions ask whether Texas law allows a single commissioner to "unilaterally terminate the Executive Director" and "unilaterally appoint an acting Executive Director without consultation in an appropriate setting with the other two

---

[1]See Letter from Honorable Rafael Anchia, Chair, House Comm. on Int'l Trade & Intergov'tl Affairs, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Dec. 14, 2017), https://www.texasattorneygeneral.gov/opinion/requests-for-opinions-rqs ("Request Letter").

[2]See Letter from Alex Schoch and Vanessa Burgess, Office of Gen. Counsel, R.R. Comm'n, to Virginia Hoelscher, Chair, Op. Comm. at 2 (Jan. 23, 2018) (explaining that the Commission's Office of General Counsel disputes the accuracy of the facts presented in the Request Letter); Letter from Honorable Wayne Christian, Comm'r, R.R. Comm'n, to Virginia Hoelscher, Chair, Op. Comm. at 1 (Jan. 25, 2018) ("I do not believe the Chairman of the R.R. Comm'n of Texas 'unilaterally fired' our previous executive director."); Letter from Honorable Ryan Sitton, Comm'r, R.R. Comm'n, to Virginia Hoelscher, Chair, Op. Comm. at 1 (Jan. 25, 2018) (explaining that the information presented in the Request Letter "accurately describes what transpired") (letters on file with the Op. Comm.).

commissioners." Request Letter at 1.[3] Three elected officials form the Commission, and they each serve six-year terms. TEX. CONST. art. XVI, § 30(b). The three commissioners "elect one commissioner as the chairman." TEX. NAT. RES. CODE § 81.01002. However, the statutory authority granted to the Commission is not bestowed upon its individual commissioners but instead jointly bestowed upon the Commission as a whole. *See id.* § 81.053 ("Commission Powers"). "A joint authority given to any number of officers or other persons may be executed by a majority of them unless expressly provided otherwise." TEX. GOV'T CODE § 312.004.

Furthermore, decisions entrusted to governmental bodies must be made by the body as a whole at a properly-called meeting. *Webster v. Tex. & Pac. Motor Transp. Co.*, 166 S.W.2d 75, 76–77 (Tex. 1942). The central requirement under the Open Meetings Act ("the Act") mandates that "[e]very regular, special, or called meeting of a governmental body shall be open to the public, except as provided by [the Act]." TEX. GOV'T CODE § 551.002.[4] The Act generally defines "meeting" as "a deliberation between a quorum of a governmental body . . . during which public business . . . is discussed or . . . the governmental body takes formal action," and it generally defines "quorum" as "a majority of a governmental body." *Id.* § 551.001(4), (6). As a three-member governmental body, the Commission creates a quorum with two commissioners. Employment decisions regarding its executive director involve significant public business of the Commission, and any formal action taken in that regard must occur at an open meeting. Thus, a single commissioner lacks authority to unilaterally terminate or hire an executive director without deliberation and a decision from the Commission at a properly-called meeting in compliance with the Open Meetings Act.

In your third question, you ask whether giving an employee a choice of resigning or being fired constitutes termination, and if so, whether that constitutes official agency action. Request Letter at 1. "Constructive discharge occurs when an employee has quit her job under circumstances that are treated as an involuntary termination of employment." *Haley v. Alliance Compressor*, LLC, 391 F.3d 644, 649 (5th Cir. 2004). Texas law recognizes the doctrine of constructive discharge in certain instances. *Epps v. NCNB Tex.*, 7 F.3d 44, 46 (5th Cir. 1993) (citing *Hammond v. Katy Indep. Sch. Dist.*, 821 S.W.2d 174, 177 (Tex. App.—Houston [14 Dist.] 1991, no writ). However, an ultimatum to resign or be terminated will not always constitute constructive discharge. *See, e.g., Parker v. Bd. of Regents of Tulsa Junior Coll.*, 981 F.2d 1159, 1162 (10th Cir. 1992); *see also Terban v. Dep't of Energy*, 216 F.3d 1021, 1026 (Fed. Cir. 2000) (explaining that a resignation is not involuntary merely because an employee faces a choice between resigning or being terminated). A court will consider numerous factors before it determines that a resignation was involuntary. *See Haley*, 391 F.3d at 649–50. Thus, whether the choice of resigning or being fired constitutes a termination in any given circumstance involves fact issues that cannot be resolved through the opinion process.

---

[3]Whether unilateral termination or unilateral appointment of an executive director in fact occurred at the Commission is not a question we can resolve, and nothing in this opinion should be construed to suggest a finding on this issue.

[4]"Governmental body" includes a "commission . . . within the executive or legislative branch of state government that is directed by one or more elected or appointed members" and therefore includes the Commission. TEX. GOV'T CODE § 551.001(3)(A).

In your final question, you ask whether written communication attempted by one commissioner on the dais at an open meeting, specifically a note passed from one commissioner to another, constitutes a violation of the Act. Request Letter at 1. Previous opinions from this office consistently conclude that written communication between a quorum of members of a governmental body can, in certain instances, constitute an illegal meeting under the Open Meetings Act. *See* Tex. Att'y Gen. Op. Nos. GA-0896 (2011) at 4 ("Electronic communications could, depending on the facts of a particular case, constitute a deliberation and a meeting for purposes of the Texas Open Meetings Act."), JC-0307 (2000) at 5–6 (concluding that the term "deliberation" is not limited to only spoken words), DM-95 (1992) at 5–6 (concluding that any deliberation between a quorum related to a jointly signed statement is a meeting subject to the Act).

For a communication, oral or written, to constitute a meeting under the Act, it must address public business, and it must involve a deliberation among a quorum of the governmental body. *See* Tex. Att'y Gen. Op. No. GA-0989 (2013) at 2–3 (concluding that a consultation between one member of a governmental body and an employee does not constitute a meeting subject to the Act). The Act defines "deliberation" as a "verbal exchange." TEX. GOV'T CODE § 551.001(2). A "communication attempted," as you describe, may not be sufficient, by itself, to constitute a deliberation. For an unlawful meeting to occur in the circumstances you describe, the communication must be received and deliberated, and it must involve the public business of the governing body. Each of these elements raises fact questions that are not amenable to resolution in an attorney general opinion. *See Foreman v. Whitty*, 392 S.W.3d 265, 276 (Tex. App.— San Antonio 2012, no pet.) (noting fact issues the evidence raised about whether a communication was received and deliberated by a quorum and whether it involved public business); *see also* Tex. Att'y Gen. Op. No. JC-0307 (2000) at 1 ("We cannot and do not resolve whether . . . any person has actually violated the Open Meetings Act. Such a determination would require the investigation and resolution of fact questions, which cannot be done in an attorney general opinion.").

### S U M M A R Y

A single member of the Railroad Commission lacks authority to unilaterally terminate or hire an executive director without deliberation and a decision from the Commission as a whole at a properly-called meeting.

Whether the choice of resigning or being fired constitutes a termination in any given circumstance involves fact issues that cannot be resolved through the opinion process.

Whether a written communication sent from one commissioner to another involves a violation of the Open Meetings Act involves fact issues that cannot be resolved through the opinion process.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee